# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA WILLIAMS, Class | ) | |
| Representative, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:13-2393 |
| | ) | |
| vs. | ) | Removed from the 45th Judicial Circuit, |
| | ) | Lincoln County, Missouri |
| EMPLOYERS MUTUAL CASUALTY | ) | Cause No. 13L6-CC00131 |
| COMPANY, CAPITOL INDEMNITY | ) | Div. 1 |
| INSURANCE COMPANY, OWNERS | ) | |
| INSURANCE COMPANY, and THE | ) | |
| COLLIER ORGANIZATION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT OWNERS INSURANCE COMPANY'S
## NOTICE OF REMOVAL

Defendant Owners Insurance Company ("Owners"), under the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. §§ 1332(d), 1446(b) and 1453, hereby removes the Equitable Garnishment Lawsuit, Cause No. 13L6-CC00131, pending in the Circuit Court of Lincoln County, Missouri, to the United States District Court for the Eastern District of Missouri, Eastern Division.  In support of this removal, Owners states:

## I.  INTRODUCTION

CAFA expanded federal diversity jurisdiction to confer jurisdiction over certified and putative class actions where:  (1) the class contains over 100 members; (2) minimal diversity exists between the parties, *i.e.*, at least one member of a class of plaintiffs is a citizen of a state

different from a defendant; and (3) the aggregate amount in controversy exceeds $5 million. Based on the allegations in Plaintiff's Petition for Equitable Garnishment, the judgments in the underlying damages action, and the commercial general liability insurance policies issued by Owners and the other insurance company defendants, these three prerequisites for removal under CAFA removal are met.

First, the class contains over 100 members.  As alleged in Plaintiff's Petition for Equitable Garnishment, Plaintiff is the representative of a certified class of 2,694 members.

Second, the requirement of minimal diversity under CAFA is met.  Plaintiff Barbara Williams is a citizen of the State of Missouri, while Owners is a citizen of Ohio and Michigan.

Third, the CAFA amount-in-controversy requirement is satisfied. Plaintiff seeks satisfaction of an underlying judgment of $82,037,000 under nine separate commercial general liability insurance policies issued by the defendant insurance companies.  The amount-in-controversy requirement is met by consideration of the Owners policies alone. The four Owners policies each have a $1 million per occurrence limit of liability and a general aggregate limit of $2 million.  Thus, as to Owners, alone, Plaintiff's action place at issue $8 million in insurance coverage.

## II.  FACTUAL BACKGROUND

### A.    THE UNDERLYING DAMAGES LAWSUIT

The action sought to be removed, namely, Plaintiff's Petition for Equitable Garnishment (Exhibit A to Notice of Removal), is predicated on orders and judgments

entered in an underlying damages lawsuit.  On March 5, 2008 Michele Pratt, as a putative class representative, filed a class action lawsuit on behalf of the tenants/residents of the Autumn Hills Mobile Home Park in Lincoln County, Missouri, based on their alleged exposure from contaminated water from two wells against the Collier Organization, Inc. ("Collier"), namely, *Michelle Pratt v The Collier Organization, Inc.*, Cause No. 68L6-CC00042 (Mo. Cir. Ct., Lincoln Cty.) ("Underlying Damages Lawsuit").  Collier is Owners' insured.  Colliers is also the insured of the other insurance company defendants.

In paragraph 36 of the Petition, the putative class representative alleged that two wells "exceeded the Maximum Contaminant Level for Gross Alpha Particle activity, Radium 226 and combined Radium 226 and Radium 228."  For a period commencing in 1998, the putative class representative sought damages based on such diverse theories of liability as Fraud (Count I); Violation of Missouri Merchandising Practices Act ("MMPA") (Count II); Breach of Implied Warranty of Habitability (Count III); Negligence (Count IV); Negligence Per Se (Count V); and Breach of Contract (Count VI). (A copy of the Petition in the Underlying Damages Lawsuit is attached as Exhibit B to the Notice of Removal.)

In January 20, 2009, the trial court entered a class certification order under Missouri Rule of Civil Procedure 52.08 appointing Michelle Pratt as class representative.  (Exhibit C to Notice of Removal)  On August 9, 2010, the trial court granted plaintiff's motion to substitute Barbara Williams as class representative.   (Copies of this Order and the accompanying Affidavit of Barbara Williams are attached as Exhibits D and E.)

Before the evidentiary hearing, class counsel dismissed the counts seeking damages for fraud, the MMPA violation, implied warranty, negligence per se, and breach of contract, leaving only a negligence claim.  In addition, by oral amendment at the hearing, counsel added a trespass claim.

Following an evidentiary hearing on liability, on December 14, 2012, the trial court entered a Liability Judgment for the class on the remaining theories of liability, namely, negligence and trespass.  (The trial court's Liability Judgment is Exhibit 1 to the Petition for Equitable Garnishment, which is attached as Exhibit A to the Notice of Removal.)

On August 28, 2013, after another evidentiary hearing, the trial court entered a final judgment on class damages.  (Exhibit 2 to the Petition for Equitable Garnishment, attached as Exhibit A to the Notice of Removal.)  The trial court entered judgment for the class in the total amount of $82,037,000, against Collier, plus post-judgment interest at the maximum statutory rate.  *Id.*

The class then filed a Petition of Equitable Garnishment against Collier and three of its insurers that issued policies to Collier during the January 1, 1998, to January 1, 2009 class period.

B.     **The EQUITABLE GARNISHMENT ACTION**

Owners now removes Plaintiff's Petition for Equitable Garnishment, which she filed in Cause No. 18L6-CC000131 (Mo. Cir. Ct., Lincoln Cty.) , a copy of which is attached hereto as Exhibit A.  In the removed action, Plaintiff Barbara Williams, as representative of a certified class of 2,694 members, seeks to recover an $82,037,000 judgment, plus post-

4

judgment interest, from three of the four defendants: Owners, Capital Indemnity Insurance Company, and Employers Mutual Casualty Company under the CGL policies that they issued to their insured, Collier. (Exhibit A, Petition for Equitable Garnishment, ¶ 50.)

Under the "WHEREFORE" clause of Plaintiff's Equitable Garnishment Petition, she seeks a judgment only against the three insurers under their commercial general liability insurance policies for the $82,037,000 judgment, plus post-judgment interest. No relief is sought against Collier. Plaintiff filed the removed action Collier and Plaintiff entered into an agreement under MO. REV. STAT. § 537.065 in which Plaintiff agreed to limit recovery of the judgment against Collier to specified assets, namely, the insurance policies issued by Owners, Capital Indemnity Insurance Company, and Employees Mutual Casualty Company.

The Section 537.065 agreement provides, in pertinent part, as follows:

> Plaintiff, on behalf of the entire class, and the defendants (the Collier Organization, Inc. agreed and stipulate that any and all recovery to be obtained through the presently lawsuit referenced above, or any other action asserting the same facts as a basis of liability, shall be limited to the insurance policies defendants have agreed to assign to plaintiff….

(Agreement to Limit Recovery to Specified Assets ("Agreement")" ¶ 4, attached as Exhibit C hereto.) This limitation on Plaintiff's recovery also extended to Collier's officers, directors, and shareholders. (Exhibit C, Agreement, ¶ 6.)

### III.   REMOVAL UNDER CAFA

CAFA, at its base, extends federal diversity jurisdiction in the context of putative and certified class actions. *In re Burlington Northern Santa Fe Railway Co.*, 606 F.3d 379, 381 (7th Cir. 2010). The reason CAFA was enacted is well established:

> A primary purpose in enacting CAFA was to open the federal courts to corporate defendants out of concern that the national economy risked damage from a proliferation of meritless class action suits….Abuses in class actions undermine…the free flow of interstate commerce…in that State and local courts are keeping cases of national importance out of Federal court.  Congress expressly intended CAFA to expand federal diversity jurisdiction over class actions….

*Bell v. Hershey Co.,* 557 F.3d 953, 957 (8th Cir. 2009) (citations and internal quotations omitted); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1208 n. 52 (11th Cir. 2007).

CAFA accords federal subject matter jurisdiction where there is minimal diversity – that is where the citizenship of a single class member and a single defendant are diverse.

> Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications that any other type of lawsuit, [Congress] firmly believes that such cases properly belong in federal court.  S. REP. No. 109-14, at 4 (2005) (as reprinted in 2005 U.SA.C.C.A.N. 3, 5).

CAFA gives district courts original jurisdiction of "any civil action" that is a class action, provided certain elements are met.  28 U.S.C. § 1332(a)(2).  Under CAFA's definitional section, "class action" means "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure of similar State statute…authorizing an action to be brought by 1 or more representative persons."  28 U.S.C. § 1332(1)(b).  "Class" means all of the "class members" that are "persons (named or unnamed) who fall within the definition of a proposed or certified class."  28 U.S.C. § 1332(d)(1)(A) and (C).  CAFA also provides that it "shall apply to any class action before or after the entry of a class certification order."  28 U.S.C. § 1332(d)(8).  "Class certification order" means an order issued by a court approving the treatment of some or all aspects of a civil action as a class action."  28 U.S.C. §

1332(d)(1)(D).   Thus, under CAFA, a district court has original jurisdiction over both uncertified ("putative") and certified class action civil cases.  *Cunningham Charter Corp. v. Learjet, Inc.,* 592 F.2d 805, 806 (7th Cir. 2010).

As explained above, on January 29, 2009, the Underlying Damages Action was certified as a class action.  On August 9, 2010, under affidavit of same date, Barbara Williams was substituted as a class representative.  On December 21, 2012, the class certification order was amended to encompass the time period from January 1, 1998, to January 1, 2009.  (These documents are attached to the Notice of Removal as Exhibits C, D, E, and F.)  The Class was certified under Missouri Supreme Court Rule 52.08.

CAFA requires the class action to be brought or certified under a rule similar to Federal Rule of Civil Procedure 23.  Courts have repeatedly held that MO. R. CIV. P. 52.08 is virtually identical to FED. R. CIV. P. 23.  *See, e.g., State ex rel. Byrd v Chadwick*, 956 S.W.2d 369, 379 (Mo. App, WD 1997); *State ex rel American Family Mut. Ins. Co.v Clark*, 106 S.W.3d 483, 490 (Mo. banc 2003); and *Grosser v Kandel-Iken Builders, Inc.*, 647 S.W.2d 911, 916 (Mo. App. E.D. 1983).  Hence Missouri courts use federal precedent under Rule 23 in interpreting and applying Missouri's class action rule.  *State ex rel. Union Planters Bank, N.A. v Kendrick*, 142 S.W.3d 729, 736 (Mo. 2004).  Thus, the class here was certified under the equivalent of Rule 23.

To perfect removal under CAFA, the following requirements also must be met: (1) the class contains at least 100 members; (2) minimal diversity exists between the parties; and (3) the aggregate amount in controversy exceed $5,000,000.  *Purdue Pharma L.P. v Kentucky*,

704 F.3d 208, 213 (2d Cir. 2013.)  Although CAFA grants broad federal jurisdiction over class

actions, it did not alter the general rule that the party seeking to remove the case to federal

court bears the burden of establishing federal jurisdiction.  *Westerfield v Independent*

*Processing,* LLC, 621 F.3d 819, 822 (8th Cir. 2010)

## IV.   ALL REQUIREMENTS FOR REMOVAL UNDER CAFA ARE MET

### A.   THIS REMOVAL IS TIMELY.

Under 28 U.S.C. § 1446(b), a notice of removal must be filed with thirty days after

receipt of service.  In the removed action, the Missouri Director of Insurance, on Owners'

behalf, was served on October 30, 3013; therefore, Owners' Notice of Removal is timely.

### B.   MINIMAL DIVERSITY IS MET.

For removal under CAFA, only minimal diversity must be met.  The removed action

satisfies this requirement.

In the Civil Cover Sheet filed with her Petition for Equitable Garnishment, Plaintiff

Barbara Williams identified her address as 116 Boulder Drive, Old Monroe, Missouri 63369.

(Exhibit I to Notice of Removal.)  In the Underlying Damages Action in which she was

substituted as a class representative, Plaintiff averred that she was a resident of Autumn Hills

Mobile Home Park from December 1, 2002, to July 20, 2008.  (Affidavit of Barbara Williams,

Exhibit D to Notice of Removal.)  These facts demonstrate Plaintiff has been a long-term

resident of the State of Missouri; therefore, she is a Missouri citizen.

Owners is a corporation organized under the laws of the State of Ohio and has, as its principal place of business, 6101 Annacapri Blvd., Lansing, Michigan 48917.  (Exhibit L to Notice of Removal.)

Defendant Capitol Indemnity Corporation is a corporation organized under the laws of the State of Wisconsin and has, as its principal place of business, 1600 Aspen Commons, Middleton, Wisconsin 53562-4719.  (Exhibit J. to Notice of Removal.)

Defendant Employers Mutual Casualty Company is a corporation organized under the laws of the State of Iowa with its principal place of business at 717 Mulberry Street, Des Moines, Iowa 50309-3872.  (Exhibit K to Notice of Removal.)

Defendant The Collier Organization, Inc. was incorporated under the laws of the State of Missouri and has, as its principal place of business, 112 Fort Zumult Square, O'Fallon, Missouri 63366.  (Exhibit M to Notice of Removal.)  Collier is the only defendant that is a Missouri citizen.

The above facts demonstrate that CAFA's "minimal diversity" requirement is met. One class member, Barbara Williams, is a citizen of the State of Missouri, and at least one defendant, Owners, is a citizen of the States of Ohio and Michigan.  This prerequisite for CAFA removal is satisfied.[1]

---

[1] Collier's citizenship does not affect the requirement of minimal diversity under CAFA. Since Plaintiff joined Collier as a party-defendant, none of the insurance company defendants can be deemed, as a matter of law, as citizens of Missouri under the "direct action" provision of 28 U.S.C. § 1332(c)(1).  *Williams v. Liberty Mut. Ins. Co.,* 468 F.2d 1207, 1209 (5th Cir. 1972).

C.     **$5 Million Aggregate Amount in Controversy is Met.**

Removal under CAFA requires an aggregate amount of controversy in excess of $5 million. *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 985-86 (7th Cir. 2008). CAFA does not make federal jurisdiction dependent upon how much the plaintiff is sure to recover; rather, the amount sought by the plaintiff is the sum that defines the amount "in controversy." *Id.* Moreover, a removing defendant need not confess liability to establish show the controversy exceeds the threshold. *Brill v. The Country Wide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). Here, the removed action satisfies this requirement.

First, Plaintiff, in her Petition for Equitable Garnishment (Exhibit A to Notice of Removal), establishes the requisite amount in controversy. Plaintiff specifically alleges that as a result of the final judgment entered in the Underlying Damages Action that the defendant insurance companies, under the nine separate commercial general liability insurance policies that they issued to Collier, are legally obligated "to pay as damages the total amount of $82,037,000, plus post-judgment interest at the maximum statutory rate." (Petition for Equitable Garnishment, ¶ 50, Exhibit A to Notice of Removal.)

Second, Plaintiff's Section 537.065 Agreement with Collier confirms satisfaction of the amount in controversy. Under the Agreement (Exhibit H), Collier assigned to Plaintiff its rights under the nine policies, as follows:

1.     ASSIGNMENT OF INSURANCE POLICIES.  Defendant shall assign to Plaintiff all of their rights, title and interest in and to those certain insurance policies identified as follows:

- Employers Mutual Casualty Company; Policy Number 1D9 92 87; effective from March 13, 1999 to March 13, 2000.

- Employers Mutual Casualty Company; Policy Number 1D9 92 87; effective from March 13, 2000 to March 13, 2001.

- Employers Mutual Casualty Company; Policy Number 1D9 92 87; effective from March 13, 2001 to March 13, 2002;

- Capital Indemnity Insurance Company; Policy Number CP00189527; effective from April 1, 2003 to April 1, 2004.

- Capital Indemnity Insurance Company; Policy Number CP00189527; effective from April 1, 2004 to April 1, 2005.

- Auto-Owners Insurance Policy Number 052305-07309386-05; effective from April 1, 2005 to April 1, 2006.

- Auto-Owners Insurance Policy Number 052305-07309386-06; effective from April 1, 2006 to April 1, 2007.

- Auto-Owners Insurance Policy Number 052305-07309386-07; effective from April 1, 2007 to April 1, 2008.

- Auto-Owners Insurance Policy Number 052305-07309386-8; effective from April 1, 2008 to April 1, 2009.

The four Owners policies, which are referenced as Auto-Owners Insurance policies, each have a $1 million limit of liability and a general aggregate limit of $2 million. (Owners' policy declaration pages are attached as Exhibits P, Q, R, and S to the Notice of Removal.) Thus, Plaintiff's claim against the Owners' policies, alone, make the amount in controversy in excess of $5 million. The other defendant insurance companies have similar limits of liability. On information and belief when all insurance policies listed above are considered, the total limits of liability certainly exceeds $7 million in the aggregate. By claiming the full

judgment amount of $82,037,000, plus post-judgment interest, Plaintiff plainly has put into controversy an amount far in excess of $5 million.

### D.   NUMBER OF CLASS MEMBERS

For removal under CAFA, the certified class must exceed 100 members.  Here, this requirement is met.  Plaintiff, in her Petition for Equitable Garnishment (Exhibit A) attached, as Exhibit 2 to her Petition, the Final Judgment entered on January 29, 2009 in the Underlying Damages Action.  In that judgment, the trial court determined the size of the class to be "2,694 class members" for the class period from January 1, 1998, to January 1, 2009.  This certified class far exceeds the requisite 100 class members required for CAFA jurisdiction to attach.

### E.   ORIGINAL CAFA JURISDICTION IN THE DISTRICT COURT EXISTS

Based on the foregoing, minimal diversity, an amount in controversy in excess of $5,000,000 and a class exceeding 100 members exist.  Therefore, Owners has met its burden to prove CAFA diversity jurisdiction is present.

## V.   NO EXCEPTION TO CAFA APPLIES

### A.   BURDEN OF PROVING EXCEPTIONS

CAFA contains two mandatory and one discretionary exception to original jurisdiction in the district courts.  None is applicable.

The two mandatory exceptions are: (1) the "local controversy" exception (28 U.S.C. § 1332(d)(4)(A)) and (2) the "home state" exception.  (28 U.S.C. § 1332(d)(4)(B)).  The discretionary exception referred to as the "interests of justice exception" can be found at 28

U.S.C. § 1332(d)(3).  Congress crafted CAFA to favor federal jurisdiction over class actions and CAFA's legislative history evidences Congress's intent that these exceptions are be construed narrowly, with all doubts resolved in favor of exercising jurisdiction in the district courts.  S.Rep. No. 109-14 at 42, U. S. Code Cong. & Admin. News 3, 40; *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163-64 (11th Cir. 2006).  The party seeking to invoke these exceptions has the burden of proof to establish the essential elements of the exceptions by a preponderance of the evidence.  *Westerfeld v. Independent Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010); C*ity of O'Fallon, MO. v. CenturyLink, Inc.*, 930 F.Supp.2d 1035, 1045 (E.D. Mo. 2013).

**B.    "LOCAL CONTROVERSY" EXCEPTION**

Under the "local controversy" exception, a district court "shall" decline to exercise jurisdiction over a class action lawsuit in which (1) more than two-thirds of the class members are citizens of the state where the action was originally filed; (2) at least one defendant "from whom significant relief is sought by members of the plaintiff class" and "whose alleged conduct forms the basis for claims asserted by the proposed class" is a citizen of the state in which the class action was originally filed; (3) the principal injuries took place in the state which the action was filed; and (4) no other class action alleging similar facts was filed in the three years before the commencement of the current class action.  28 U.S.C. § 1332(d)(4)(A); *Westerfeld*, 621 F.3d at 822; *City of O'Fallon*, 930 F.Supp.2d at 1045; *Boegman v. Bank Star*, 2012 WL 4793739, * 3 (E.D. Mo. Oct. 9, 2012); and *Barfield v. Sho-Me power &*

*Elec. Co-op.,* 2012 WL 2368517 *2 (W.D. Mo. June 21, 2012).  Here, Plaintiff cannot prove at least two of these essential elements.

The two-thirds prerequisite requires Plaintiff to prove citizenship of class members "at the time of removal."  The class period had a long duration – January 1, 1998, through January 1, 2009.  (*See* The Final Judgment in the Underlying Damages Action, Exhibit 1 to the Petition for Equitable Garnishment, attached as Exhibit A to the Notice of Removal.) The Final Judgment in the Underlying Damages Action acknowledges that during the class period a significant number of residents left and a significant number of new residents moved in the Autumn Hills Mobile Home Park.  *Id.*  The trial court estimated an annual turnover rate of 12.5% using U.S. Census Bureau data and applying that as an estimate.  *Id.* There were 150 new residents each year in the 398 mobile home units in the park.  *Id.*  Thus, while at some point in time, each of the 2,694 class members were Missouri residents, there is, and can be, no evidence of residency at the time of removal.  Hence, the Class Notice was given by publication.  (*See* Exhibits N (Class Notice) and O (Affidavit of Publication.))  Class member addresses either were not current or unknown.

CAFA jurisdiction is determined at the time of removal.  *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000).  Any estimate of class membership that attempts to show that it is reasonably likely that two-thirds of the class members are, or were, citizens of Missouri is insufficient because the burden is upon Plaintiff to actually produce evidence of class citizenship at the time of removal is required.  *See, e.g., Romano v. SLS Residential, Inc.*, 812 F.Supp.2d 282,287-88 (S.D. N.Y. 2011); *Anthony v. Small Tube Mfg. Corp.*, 535

F.Supp.2d 506, 508 (E.D.Pa. 2007) (Noting class members may change jobs and move to another state.)  Thus, any estimate of citizenship is guesswork which is insufficient.  *In re Sprint Nextel Corp.*, 593 F.3d 669, 674 (7th Cir. 2010) (local state citizenship for CAFA exception not established by cell phone telephone numbers).  For an exception to CAFA to be found, evidence and proof are required.

The Eighth Circuit squarely has held a party moving for remand must prove the applicability of an exception to CAFA:

> The [district] court stated that 'even if application of the exception was not as clear as it is, any doubt ... must be resolved in favor of remand.'  Provident argues that this was a misstatement of the law, and we agree. Once Provident satisfied CAFA's basic jurisdictional requirements (and Westerfeld does not contend on appeal that Provident failed to do so), the burden shifted to Westerfeld to establish that CAFA's local-controversy exception applied.  The District Court erred by resolving any doubt regarding applicability of the local-controversy exception in favor of remand, i.e., in favor of Westerfeld, the party who was invoking the exception to federal jurisdiction and the party who was required to establish that the exception applied.  We agree with Provident that the party bearing the burden of proof is not entitled to the benefit of the doubt.  On remand, the District Court should resolve any doubt about the applicability of CAFA's local-controversy exception against Westerfeld, the party who seeks remand and the party who bears the burden of establishing that the exception applies.

*Westerfeld v. Independent Processing, LLC*, 621 F.3d 819, 822-23 (8th Cir. 2010); *City of O'Fallon, Mo. v. CenturyLink, Inc.*, 2013 WL 1036514, *8 (E.D. Mo. 2013) ("[T]he party seeking to invoke the local controversy exception bears the burden of establishing all ... elements by a preponderance of the evidence.").

In conformity with the Eighth Circuit's rule, district courts in this circuit have very strictly adhered to a standard of actual proof to support the exception, even in cases, such as

home mortgage origination or Missouri land ownership, where "common sense and logic" would much more strongly suggest a two-thirds local nexus than is surmised here:

> The Court holds the simple fact that all members of the class had to have paid an "origination fee," or other similarly worded fee or charge, in connection with a mortgage loan from Defendant for a Missouri residential property in the 5 years immediately prior to the filing of this suit, is not sufficient to establish that these members were Missouri citizens at the time the complaint was filed. Plaintiffs provide no evidence to fill in the gaps, and thus, given the narrow interpretation to be given to the local controversy exception under CAFA, [Plaintiffs have] failed to establish beyond a preponderance of the evidence that the first prong of the local controversy exception is met.

*Boegeman v. Bank Star*, 2012 WL 4793739, \*3 (E.D. Mo. 2012); *Barfield v. Sho-Me Power Elec. Co-op.*, 2012 WL 2368517, \*3 (W.D. Mo.2012) (holding that where putative class consisted "of all members who own land in Missouri underlying Defendants' electric-transmission or distribution lines and on or in which a Defendant had installed – or announced plans for the installation of -- fiber-optic cable," evidence of current mailing addresses for retail electric customers, current mailing addresses for property tax bills in two counties and mailing addresses (if shown) on deeds transferred in one county was *insufficient* to establish local citizenship of two thirds of the class.)

Given both the class representative and the trial court in the Final Judgment entered in the Underlying Damages Action acknowledged the inherent transitory nature of the class, it would be quite remarkable, indeed, if Plaintiff could meet her burden of proof and submit evidence that two-thirds of the class are citizens of the Missouri at the time of removal.

Plaintiff also cannot establish another essential element that she must prove to establish the local controversy exception, namely, the existence of a "significant defendant" who is non-diverse.  Collier is the only non-diverse defendant, and it is not significant.

A "significant defendant" is defined in CAFA as one "from whom significant relief is sought by members of the plaintiff class and "one whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class."  *Westerfield,* 621 F.3d at 823 (quoting 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa) and (bb)).  CAFA does not provide a definition for "significant relief" and/or "significant basis."

The word "significant" is commonly understood as "meaningful."  AM. HERITAGE DICTIONARY (2d Coll. Ed. 1982) (quoted in *Graphic Commm'ns Local 1B Health and Welfare Fund "A" v. CVS Caremark Corp.*, 725 F.Supp.2d 849, 854-44 (D. Minn. 2010)).  The Eleventh Circuit defined "significant relief" as a "significant portion of the entire relief sought by the class."  *Evans*, 449 F.3d at 1167.  The Third Circuit holds the significant basis provision effectively calls for comparing the defendant's alleged conduct to the alleged conduct of all defendants.  *Kaufman v. Allstate New Jersey Ins Co.*, 561 F.3d 144, 156 (3d Cir. 2009).  The Third Circuit admonished that a court analyzing the "significant defendant" portion of the local controversy exception must provide a reasoned analysis that focuses on the conduct of defendants – local and non-local – alleged in the complaint.  *Id.* at 157.

In *Westerfeld* a mortgagor filed a state court class action alleging violation of the Missouri Merchandising Practices Act, based on charging a "broker processing fee" against California mortgage company and a Missouri company that processed the documents.

17

Because the Missouri defendant participated in the less that 1.5% of the loans at issue and generated six tenths of one percent of the fees, the Eighth Circuit concluded that the Missouri defendant was not "significant." *Westerfeld,* 621 F.3d at 824.

In *Coffey, et al v. Freeport, McMoran, Copper & Gold, et al.*, 581 F.3d 1240 (10th Cir. 2009), the Tenth Circuit determined that significant relief was being sought against the local defendant in the complaint. *Id.* at 1244-45. The Tenth Circuit stated the phrase "significant relief is sought" does not mean "significant relief that may be obtained." *Id.* at 1245. The Tenth Circuit emphasized that all class members wanted to hold the local defendant jointly and severally liable on their claims and, therefore, every defendant was significant. *Id.* at 1244.

In *Coleman v. Estes Express Lines*, 631 F.3d 1010 (9th Cir. 2011) the Ninth Circuit held that "significant basis" directs courts to look only at the complaint to determine the applicability of the local controversy exception. *Id.* at 1015. The *Coleman* court determined the local defendant was "significant" because the complaint sought damages equally from all defendants. *Id.* at 1020.

In her Petition for Equitable Garnishment (Exhibit A to Notice of Removal), Plaintiff seeks no relief or damages from the local defendant Collier. Further, by their Section 537.065 Agreement, the Plaintiff class is precluded from seeking damages against Collier. Therefore, Collier is not, and cannot be, a significant defendant.

## C.      "HOME STATE" CONTROVERSY

The "home state" exception provides that a district court shall decline to exercise jurisdiction when two-thirds (2/3) or more of the class members are citizens of the state where the action was filed and the "primary defendants" are also citizens of the state where the action was filed.

CAFA does not define "primary defendants" for application of this exception. Some courts construe the term by reference to an analogous provision of the Multiparty, Multiforum, Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369. Under that statute, primary defendants are those that are directly liable to plaintiffs, while secondary defendants are those parties sued under theories of vicarious liability or joined for the purposes of contribution or indemnification. *See, e.g.*, *Dean v. Draughans Junior College*, 2012 WL 2357492, *4 (M.D. Tenn. June 20, 2012); *Anthony v. Small Tube Mfg. Corp.,* 535 F.Supp.2d 506, 515-16 (E.D. Pa. 2007); and *Kitson v. Bank of Edwardsville*, 2006 WL 3392752, * 17 (S.D. Ill. Nov. 22, 2006).

Other courts reference the final Senate Judiciary Committee's Report to provide guidance as to what CAFA means by term "primary defendant." S.Rep. No. 109-14 at 43 (reprinted in 2005 U.S.C.C.A.N. at 41). The report states that the Committee intends "primary defendants" to be interpreted to reach those defendants who are the real targets of the lawsuit, *i.e.*, the defendants that would be expected to incur most of the loss if liability is found. *Id. Brooks v. United Heath Care Group, Inc.*, 2007 WL 2827808 * 5 (S.D.N.Y. Sept. 27, 2007).

Still other courts have adopted a four-prong test holding that a primary defendant is one who (1) has the greater liability exposure; (2) is most able to satisfy a potential judgment; and (3) the subject of a significant portion of the claims asserted by plaintiffs; or (4) is the only defendant named in a particular cause of action.  *Cooper v. R.J. Reynolds Tobacco Co.*, 586 F.Supp.2d 1312, 1318 (M.D. Fla. 2008); *Brook*, 2007 WL. 827808 at * 5.

Under none of these definitions can Collier, the only local defendant, be deemed to be a primary defendant.  In the removed action, no relief, whatsoever, is sought against Collier.  Thus, the only primary defendants in the removed action are Owners, Capital Indemnity Insurance Company, and Employers Mutual Casualty Company, all of which are foreign defendants and non-citizens of Missouri.

Furthermore, the consensus among courts is that, to apply the "home state" exception, all "primary defendants" must be citizens of the state where the action originated.  *Pate v. Huntington Nat'l Bank*, 2013 WL 557 195 * 5 (N.D. Ohio, Feb. 12, 2013); *Adams v. Macon County Greyhound Park, Inc.*, 829 F.Supp.2d 1127 1138 n. 13 (M.D. Ala. 2011).  This is based on CAFA's plural use of the word "defendants," which means all primary defendants must be citizens of the state where the action was filed.  *Id.*  In the removed action, no primary defendant is a citizen of Missouri.  Thus, the "home state" exception is inapplicable.

D.   **THE "INTERESTS OF JUSTICE" EXCEPTION**

CAFA also provides a "discretionary" or "interests of justice" exception.  CAFA states that a district court may, in the interests of justice and, looking at the totality of the circumstances, decline to exercise jurisdiction over a class action in which greater than one-

third (1/3) but less than two-thirds (2/3) of the class members *and the primary defendants* are citizens of the state where the action was filed, provided the enumerated six factors justify such declination.  28 U.S.C. § 1332(d)(3)(A)-(F).

This discretionary exception is inapplicable as a matter of law because all three primary defendants are citizens of other states than Missouri. Thus, an inquiry into the six factors is unnecessary and this exception could not apply on that basis alone.

### CONCLUSION

This Court has original diversity jurisdiction under CAFA.

BROWN & JAMES, P.C.

/s/ Russell F. Watters
Russell F. Watters      #25758MO
T. Michael Ward       #32816MO
Robert L. Carter       #31699MO
Kenneth R. Goleaner #51043MO
Attorneys for Defendant
Owners Insurance Company
800 Market Street, Ste. 1100
St. Louis, Missouri 63101-2501
314-421-3400
314-421-3128 – Facsimile
rwatters@bjpc.com
tward@bjpc.co,
rcarter@bjp.com
kgoleaner@bjpc.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was sent via US Mail and e-mail this 25th day of November, 2013, to:

William W. Cheeseman
Law Office of William W. Cheeseman
1124 East Cherry Street
P.O. Box 343
Troy, MO  63379
cheesemanlaw@hotmail.com
*Attorneys for Plaintiff*

Kevin C. Roberts
Breeze, Roberts, Ponder-Bates & Zimmer, L.L.C.
P.O. Box 888
Hillsboro, MO  63050
kevinroberts@rwzlaw.com
*Attorneys for Plaintiff*

Timothy A. Engelmeyer
Tony A. Pezzari
Engelmeyer & Pezzani, LLC
13321 North Outer Forty Road, #300
Chesterfield, MO  63017
tim@epfirm.com
tony@epfirm.com
*Attorneys for Plaintiff*

Robert P. Berry
Kelley F. Farrell
16150 Main Circle Dr., Ste. 120
St. Louis, MO 63017
r.berry@berrymaxon.com
k.farrell@berrymaxon.com
*Attorneys for Plaintiff*

The undersigned certifies that a true and correct copy of the foregoing was sent via US Mail this 25th day of November, 2013, to:

22

Capitol Indemnity Corporation
1600 Aspen Commons
Middleton, WI 53562-4719

Employers Mutual Casualty Company
717 Mulberry St.
Des Moines, Iowa 50309-3872

The Collier Organization, Inc.
112 Fort Zumult Square
O'Fallon, MO 63366

/s/ Russell F. Watters

11457255