IN THE CIRCUIT COURT OF LINCOLN COUNTY, MISSOURI
CIRCUIT JUDGE DIVISION

BARBARA WILLIAMS, Class Representative, )
)
Plaintiff, )
)
v. ) Cause No.:
)
) Division:
)
EMPLOYERS MUTUAL CASUALTY )
COMPANY, )
)
SERVE: )
    Employers Mutual Casualty Company )
    c/o Director of Insurance )
    301 W. High Street, Room 530 )
    Jefferson City, MO  65101 )
)
CAPITOL INDEMNITY INSURANCE )
COMPANY )
)
SERVE: )
    Capitol Indemnity Insurance Company )
    c/o Director of Insurance )
    301 W. High Street, Room 530 )
    Jefferson City, MO  65101 )
)
OWNERS INSURANCE COMPANY, )
)
SERVE: )
    Owners Insurance Company )
    c/o Director of Insurance )
    301 W. High Street, Room 530 )
    Jefferson City, MO  65101 )
)
THE COLLIER ORGANIZATION, INC., )
)
SERVE: )
    The Collier Organization, Inc. )
    c/o Donald G. Collier, Jr. )
    Registered Agent )
    112 Fort Zummalt Square )
    O'Fallon, MO  63366 )
)
               Defendants. )

FILED
OCT 18 2013
Circuit Court
Lincoln County, MO

13L6-CC00131

1

## PETITION FOR EQUITABLE GARNISHMENT

COMES NOW Barbara Williams, as class representative, by and through class counsel, and for her Petition for Equitable Garnishment, pursuant to Missouri Revised Statutes § 379.200, states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Barbara Williams is the class representative of a class of residents who lived in the Autumn Hills Mobile Home Park located in Old Monroe, Lincoln County, State of Missouri from January 1, 1998 to January 1, 2009 who were exposed to elevated levels of alpha particle radiation from water pumped into their homes. The class was certified by the Circuit Court of Lincoln County, Missouri, in an action captioned *Pratt v. The Collier Organization, Inc. et al.*, Cause No. 08L6-CC0004 ("the Underlying Lawsuit").

2. At all relevant times mentioned herein, Defendant The Collier Organization, Inc. ("Collier") is a corporation organized and existing under the laws of the State of Missouri with its principal place of business located in O'Fallon, Missouri.

3. At all relevant times mentioned herein, Defendant Employers Mutual Casualty Company ("EMC") is now and was a foreign insurance corporation with its principal offices located in the State of Iowa and is now and was authorized and approved to issue and, upon information and belief, did issue policies of insurance and collect premiums within Lincoln County in the State of Missouri, thereby insuring residents of Missouri, including Collier.

4. At all relevant times mentioned herein, Defendant Capitol Indemnity Insurance Company ("Capitol Indemnity") was a foreign insurance corporation with its principal offices located in the State of Wisconsin and, upon information and belief, was authorized and approved

to issue and, upon information and belief, did issue policies of insurance and collect premiums within Lincoln County in the State of Missouri, thereby insuring residents of Missouri, including Collier.

5. At all relevant times mentioned herein, Defendant Owners Insurance Company ("OIC") is now and was a foreign insurance corporation with its principal offices located in the State of Michigan and is now and was authorized and approved to issue and, did issue policies of insurance and collect premiums within Lincoln County in the State of Missouri, thereby insuring residents of Missouri, including Collier.

6. This Court has personal jurisdiction over defendants pursuant to Section 506.500 of the Missouri Revised Statutes.

7. The amount at issue is an amount in excess of the jurisdictional minimum of this Court.

## ALPHA PARTICLE RADIATION
## IN THE MOBILE HOME PARK's WELL WATER

8. Collier initially developed and then subsequently leased individual lots in the Autumn Hills Mobile Home Park ("Autumn Hills") to tenants and provided them with certain basic services, including water.

9. The water that Collier pumped into the homes of its tenants in Autumn Hills came from two wells.

10. From 1998 to 2008, this well water contained unacceptable elevated levels of alpha particles. An alpha particle is a subatomic particle consisting of two protons and two neutrons. Although an alpha particle is not a solid, liquid, or gas, when alpha particles are present in elevated amounts it results in a type of radiation that causes damages to human tissues and is a known carcinogen (referred hereinafter to as "alpha particle radiation").

11. For a number of years, the tenants were unaware that the water in Autumn Hills was tainted by alpha particle radiation and they consumed the water and used it for everyday household purposes.

12. On March 5, 2008, the Underlying Lawsuit against Collier was initiated by the filing of a multi-count petition, including a negligence claim, on behalf of a proposed class of tenants of Autumn Hills for bodily injuries and property damages caused by drinking and using the water containing alpha particle radiation.

13. On January 29, 2009, after a full briefing and a contested hearing, this Court, over the objection of Collier, certified a class of residents who lived in Autumn Hills in Lincoln County, Missouri, who were exposed to elevated levels of alpha particle radiation from water pumped into their homes. As amended by Order dated January 10, 2013, the class ("Class") includes:

> All persons who were tenants, members of the immediate household of a tenant, or who have otherwise resided, or consumed water pumped into any mobile home at any point in time from January 1, 1998 to January 1, 2009, in the Autumn Hills Mobile Home Park located in Old Monroe, Lincoln County, State of Missouri.

## THE COMMERICAL GENERAL LIABILITY INSURANCE POLICIES

14. Upon information and belief, Collier had corporate liability insurance, *i.e.*, Commercial General Liability ("CGL") policies, from a variety of insurance companies, including EMC, Capitol Indemnity, and OIC, at differing time periods from 1999 through 2008.

15. At all relevant times, the required premiums for the CGL policies were paid by Collier.

16. After receiving service of the Underlying Lawsuit, Collier made a demand for

4

coverage on each of the Insurers.

## DEFENDANT EMC'S DENIAL OF COVERAGE UNDER CGL POLICIES

17. For the entire and continuous period of time between March 13, 1999 to March 13, 2000, there was in existence and in full force and effect a CGL policy of insurance, policy number 1 D9 92 87, between EMC and Collier.

18. For the entire and continuous period of time between March 13, 2000 to March 13, 2001, there was in existence and in full force and effect a CGL policy of insurance, policy number 1 D9 92 87, between EMC and Collier.

19. For the entire and continuous period of time between March 13, 2001 to March 13, 2002, there was in existence and in full force and effect a CGL policy of insurance, policy number 1 D9 92 87, between EMC and Collier.

20. Collier sent a copy of the petition filed in the Underlying Lawsuit and made a demand for indemnity and defense of the Underlying Lawsuit to its insurer EMC under each of these policies.

21. On July 31, 2008, EMC denied coverage under the CGL Policy 1D9 92 87 for the claims asserted in the Underlying Lawsuit and further denied that EMC had any duty to defend Collier under the CGL Policy.

22. EMC was given the opportunity to defend Collier in the Underlying Lawsuit but refused to do so.

## DEFENDANT CAPITOL INDEMNITY'S DENIAL OF COVERAGE UNDER CGL POLICIES

23. For the entire and continuous period of time between April 1, 2003 to April, 2004 there was in existence and in full force and effect CGL policy of insurance, policy number

5

CP00189527, between Capitol Indemnity and Collier.

24. For the entire and continuous period of time between April 1, 2004 to April, 2005 there was in existence and in full force and effect CGL policy of insurance, policy number CP00189527, between Capitol Indemnity and Collier.

25. Collier sent a copy of the petition filed in the Underlying Lawsuit and made a demand for indemnity and defense of the Underlying Lawsuit to its insurer Capitol Indemnity under policy number CP00189527.

26. Capitol Indemnity initially agreed to provide a defense to the Underlying Lawsuit on behalf of its insured, Collier. However, on August 1, 2008, Capitol Indemnity denied coverage under the CGL Policy CP00189527 for the claims associated in the Underlying Lawsuit and further denied that Capitol Indemnity had any duty to defend Collier under the CGL Policy and thereby withdrew its defense effective August 15, 2008. Thus, Capitol Indemnity was given the opportunity to defend Collier in the Underlying Lawsuit and refused to do so.

## DEFENDANT OIC'S DENIAL OF COVERAGE UNDER CGL POLICIES

27. For the entire and continuous period of time between April 1, 2005 to April 1, 2006, there was in existence and in full force and effect a CGL policy of insurance, policy number 052305-0739386-05, between OIC and Collier.

28. For the entire and continuous period of time between April 1, 2006 to April 1, 2007, there was in existence and in full force and effect a CGL policy of insurance, policy number 052305-0739386-06, between OIC and Collier.

29. For the entire and continuous period of time between April 1, 2007 to April 1, 2008, there was in existence and in full force and effect a CGL policy of insurance, policy number 052305-0739386-07, between OIC and Collier.

30. For the entire and continuous period of time between April 1, 2008 to April 1, 2009, there was in existence and in full force and effect a CGL policy of insurance, policy number 052305-0739386-08, between OIC and Collier Organization.

31. Collier sent a copy of the petition filed in the Underlying Lawsuit and made a demand for indemnity and defense of the Underlying Lawsuit to its insurer OIC under policy numbers: 052305-0739386-05; 052305-0739386-06, 052305-0739386-07, and 052305-0739386-08.

32. On July 31, 2008, OIC denied coverage under the CGL Policies for the claims associated in the Underlying Lawsuit and further denied that OIC had any duty to defend Collier under the CGL Policies.

33. OIC was given the opportunity to defend Collier in the Underlying Lawsuit but refused to do so.

34. After Collier hired independent counsel for defense of the lawsuit, Plaintiffs voluntarily moved to set aside the Default Judgment previously granted to them by the Court.

## THE JUDGMENT: LIABILITY AND CLASS DAMAGES

35. On December 10, 2012, during an evidentiary hearing on liability, Plaintiffs presented substantial evidence to the Honorable David H. Ash of the Circuit Court of Lincoln County, Missouri, including numerous exhibits, reports of various experts, excerpts from deposition testimony, and affidavits. Based on the evidence, Judge Ash entered his Findings of Fact, Conclusions of Law and Judgment on December 14, 2012 (herein "Liability Judgment"). A copy of the Judgment on Liability is attached hereto as Exhibit No. 1 and incorporated as if fully set forth herein.

36. In the Liability Judgment, the Court made the following determinations, among

others, based on the evidence presented:

- [W]hen an individual ingests, inhales, or injects alpha particle emitters and alpha particle radiation into his or her body, alpha particle radiation is extremely harmful. Alpha particle radiation can penetrate the lining of the stomach, intestine, lungs, and blood vessels. Once inside the body, alpha particle radiation will damage internal tissue and organs with many negative effects.

- [I]nternal exposure to alpha particle radiation is carcinogenic and has been known to cause numerous types of cancer. Internal exposure to alpha particle radiation is especially linked to lung cancer, bladder cancer, and stomach cancer. Even short term internal exposure to a limited amount of alpha particle radiation can cause the development of cancerous cells.

- [L]ong term internal exposure to alpha particle radiation has also been linked with birth defects and infertility.

37. The Court held that, based on the evidence, once a person has internal exposure to alpha particle radiation, the individual has suffered a bodily injury.

38. The Court found that Plaintiffs ingested the water for a number of years and used the water for a variety of household purposes, including cooking, bathing, washing dishes, and cleaning clothes. The Court also found that Plaintiffs have suffered bodily injuries that were proximately caused by the ingestion and other common domestic use of the radioactive water that was pumped into their homes.

39. The Court further found that at a certain point in time Plaintiffs learned that the water was radioactive and they had to buy their own water to drink and use. This limitation on the use of Plaintiffs' own property constitutes property damage caused by the radioactive water that was pumped into their homes.

40. The Court also found that Plaintiffs suffered property damages because of the decrease in the fair market value of their mobile homes caused by radioactive water being pumped into the homes.

41. Ultimately, after reviewing extensive evidence and a full hearing, the Court entered its Findings of Fact, Conclusions of Law and Judgment ruling, among other things, that: (1) Collier is liable to the Class for claims of negligence and trespass; and (2) members of the Class, in fact, suffered bodily injuries and property damages that were proximately caused by Collier's negligence and trespass. Also, in that Judgment on Liability, the Court set a future hearing to determine the extent of damages resulting from Collier's conduct.

42. On August 28, 2013, after notice to all parties and to the Class, the Court in the Underlying Lawsuit heard additional evidence regarding the extent of damages suffered by the members of the Class.

43. Based on the evidence adduced at the damages hearing, and the evidence previously presented, Judge Ash found that the Class had suffered injury and had been damaged in the total amount of $82,037,000, plus post-judgment interest at the maximum statutory rate. Specifically, the Court found that the Class has suffered bodily injury and been damaged in the amount of $70,085,000 (an average per class member just over $26,000) and suffered an additional $11,952,000 for property damage (an average for each mobile home just over $30,000). A copy of the Judgment is attached hereto as Exhibit No. 2 and incorporated as if fully set forth herein ("Final Judgment").

### DEFENDANT INSURERS ARE BOUND BY FACTUAL DETERMINATIONS OF LIABILITY AND DAMAGES CONTAINED IN THE JUDGMENT

44. EMC, Capitol Indemnity, and OIC are bound in this equitable action by all of

9

Judge David Ash's factual determinations made in his Final Judgments on Liability and Damages that necessarily concern either (a) the liability of Collier for its negligent acts and trespass or (b) the extent of the respective injuries and the amount of damages sustained by the class as a result of Collier's negligent acts and trespass.

45. EMC, Capitol Indemnity and OIC are precluded from relitigating the issues of liability and damages in the present action because it wrongfully refused to defend Collier in the Underlying Lawsuit when they had every opportunity to do so under the applicable CGL Policies.

### DEFENDANT INSURERS' UNJUSTIFIABLE DENIAL OF COVERAGE AND REFUSAL TO DEFEND

46. The damages sustained by the Class that were caused by the "occurrences" (*i.e.*, continuous or repeated exposure to substantially the same general harmful conditions) of the insured Collier pumping radioactive water into the homes of the members of the Class in the "coverage territory" (*i.e.*, Lincoln County, State of Missouri, United States of America) during the policy periods constituted "bodily injury" and "property damages" to which the CGL Policies apply.

47. The Insurers' denial of coverage and refusal to defend Collier constituted a breach of the Insurers' contractual duty to indemnify and defend because the petition in the Underlying Action alleged damages for "bodily injury" and "property damage" for which Collier would become legally obligated to pay in the event that a future judgment was to have been entered against it in the Underlying Lawsuit.

48. None of the exclusions in the CGL Policies are applicable.

49. The Insurers are liable and responsible for all damages resulting from their aforementioned denial of coverage and breach of their agreements to defend their insured,

Collier.

50. As a result of the Final Judgment, Collier, the insured, under the above-referenced CGL Policies, is now legally obligated to pay as damages the total amount of $82,037,000, plus post-judgment interest at the maximum statutory rate, to the Class.

## EQUITABLE GARNISHMENT
## PURSUANT TO §379.200, R.S.Mo.

51. Pursuant to § 379.200, R.S.Mo., Plaintiffs are judgment creditors of Collier, an insured under each of the CGL Policies, as a result of the Final Judgment entered against it on August 28, 2013 for damages by reason of Plaintiffs having sustained and proved "bodily injury" and "property damage."

52. Plaintiffs are thus entitled to recover and apply the insurance money in the amount provided in the "Each Occurrence Limit" on the Declarations Page of each of the CGL Policies, in addition to an amount reflecting the award of statutory post-judgment interest accruing on the full amount of the Judgment in satisfaction of the Final Judgment because defendant Collier Organization was insured by Defendant Insurers against the damages sustained by the Plaintiffs.

53. In accordance with § 379.200, R.S.Mo., Plaintiffs bring this action more than thirty (30) days after having obtained the Final Judgment and it remains completely unsatisfied as of the filing of this Petition.

WHEREFORE, Plaintiff Barbara Williams, class representative, prays for a judgment under this Petition for Equitable Garnishment in favor of the Class and against Defendants EMC, Capitol Indemnity, and OIC in the total amount of $82,037,000, plus post-judgment interest at the maximum statutory rate, subject only to the applicable limits of liability expressly and unambiguously stated in the aforementioned CGL Policies and issued by Defendants EMC,

Capitol Indemnity, and OIC; and the sum which represents the set rate of nine percent interest (9%) from and after entry of the Final Judgment on August 28, 2013 until Defendants EMC, Capitol Indemnity, and OIC have paid or deposited into Court that part of the Final Judgment that is within the applicable limits as provided for in the aforementioned CGL Policies and issued by Defendants EMC, Capitol Indemnity and OIC; and such costs as Plaintiffs have herein expended; and such other sums and further relief as this Court deems just and proper under the premises.

Respectfully submitted,

BERRY & MAXSON LLC

*/s/ Robert P. Berry*

Robert P. Berry, #46236
Kelley F. Farrell, #43027
16150 Main Circle Drive, Suite 120
St. Louis, Missouri 63017
(314) 480-5881
(314) 480-5884 (facsimile)
rberry@berrymaxson.com
kfarrell@berrymaxson.com

Timothy A. Engelmeyer, #39941
Tony A. Pezzani, #562900
Engelmeyer & Pezzani, LLC
13321 North Outer Forty Road, Suite 300
Chesterfield, Missouri 63017
(636) 532-9933
(314) 863-7793 (facsimile)
tim@epfirm.com
tony@epfirm.com

William W. Cheeseman, #35514
Law Office of William W. Cheeseman
1124 East Cherry Street
P. O. Box 343
Troy, Missouri 63379
(636) 528-5299
(636) 462-6201 (facsimile)
cheesemanlaw@hotmail.com

Kevin C. Roberts, 31578
Attorney at Law
Roberts, Wooten & Zimmer, LLC
10438 Highway 21
P. O. Box 888
Hillsboro, Missouri 63050
(636) 797-2693
(636) 789-4205 (facsimile)
KevinRoberts@rwzlaw.com