## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

)
BARBARA WILLIAMS, Class Representative, )
)
      Plaintiff,              )    No. 4:13-CV-2393 RLW
)
v.                          )
)
EMPLOYERS MUTUAL CASUALTY     )
COMPANY, *et al.*,            )
)
      Defendants.         )

## MEMORANDUM AND ORDER

This matter is before the Court on the Defendant Owners Insurance Company's Motion

for Judgment on the Pleadings (ECF No. 73), Capitol Indemnity Insurance Company's Motion

for Judgment on the Pleadings (ECF No. 76), and Defendant Employers Mutual Casualty

Company's Motion for Judgment on the Pleadings (ECF No. 79). These matters are fully

briefed and ready for disposition.

## BACKGROUND

Plaintiff Barbara Williams filed the Petition for Equitable Garnishment ("Petition") as a

representative of a class of residents of a mobile home park owned by insured The Collier

Organization ("Collier").

The Petition seeks to satisfy a judgment entered in an action filed in the Circuit Court of

Lincoln County, Missouri, originally captioned *Pratt v. The Collier Organization, Inc., et al.*,

Cause No. 08L6-CC00042 (later styled *Williams v. The Collier Organization*) (hereinafter "the

Underlying Lawsuit").[1] The Underlying Lawsuit was a pollution case, which alleged that the water dispensed by Collier to the class members was contaminated with radioactive materials, bacteria and other contaminants. All three of the Defendants have issued policies that provide coverage to Collier for damages because of bodily injury and property damage. All three of the Defendants' policies, however, contain pollution exclusions. Collier requested that Defendants defend the Underlying Lawsuit. Defendants denied coverage for the Underlying Lawsuit because they contended coverage was not available under the policies because, among other reasons, the Policies' Pollution Exclusions barred coverage and because the Underlying Lawsuits did not allege either "bodily injury" or "property damage." On January 29, 2009, the Lincoln County Court certified a class of past and present residents of the mobile home park. Barbara Williams, Plaintiff in this equitable garnishment action, was named class representative.

On December 7, 2012, Williams, as class representative, entered into an agreement with Collier under Mo.Rev.Stat. §537.065, whereby Collier assigned to Williams, as class representative, the rights and interests Collier had in the insurance policies issued by the insurers to Collier during the class period. In addition, Collier agreed to execute an affidavit drafted by class counsel and to provide information to assist the class with its claims. In exchange,

---

[1] The Underlying Lawsuit was brought by plaintiff Michelle Pratt as class representative. Barbara Williams was later substituted as class representative. The Court refers to both Ms. Pratt and Ms. Williams as "Plaintiff". The Court refers to the original petition as the "Pratt Petition" (ECF No. 1-5) and the later judgment as the "Class Judgment". Although the Pratt Petition was not attached to the Petition for Equitable Garnishment, the Pratt Petition was referenced several times and, therefore, the Court can consider the Pratt Petition when addressing Defendants' Motions. *See Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008)(Under Rule 12(b)(6) and (12)(c), a district court can "consider some public records, materials that do not contradict the Complaint, or materials that are 'necessarily embraced by the pleadings.'")(internal citation omitted).

- 2 -

Williams, on the class's behalf, agreed that any judgment obtained by the class against Collier would be satisfied only by proceeding against Collier's insurance policies.

Without the Defendants' involvement, Collier did not contest an evidentiary hearing on liability, which was held on December 10, 2012. The hearing resulted in a Underlying Judgment in favor of the Class and against Collier on December 14, 2012.[2] In the Underlying Judgment, although the Pratt Petition had not asserted any trespass or alleged that any class member suffered "bodily injury" or "property damages," the Circuit Court determined that "(1) Collier is liable to the Class for claims of negligence and trespass; and (2) members of the Class, in fact, suffered bodily injuries and property damages that were proximately caused by Collier's negligence and trespass." In addition, the Circuit Court ruled that "alpha particles are subatomic and are therefore not classifiable as solid, liquid, or gas," that the particles "are not inherently thermal, and that they are "typically not an irritant to humans." The Underlying Judgment further noted that "alpha particles come from certain elements as they go through a process known as alpha decay. Alpha decay causes an element to emit alpha particles." The Underlying Judgment stated that alpha particles "simply refer[s] to the total alphas [sic] particles in the water coming from all sources. These sources include Radium 226, Radium 228, and all other elements emitting alpha particles."[3]

On August 28, 2013, the Lincoln County Circuit Court held a hearing on damages at which the class counsel presented some affidavits and documentary evidence, but called no live

---

[2] Although a Class Notice had been approved by the Lincoln County Circuit Court more than two years earlier, on April 12, 2010, there is no indication in the state record that the members of the plaintiff class were ever given notice and the opportunity to opt out of the class before the hearing where the court entered the unopposed Judgment. (ECF No. 75-1 at 5).

[3] On January 10, 2013, the Lincoln County Circuit Court entered an order amending the class definition and ordering the issuance of a new Class Notice. The record indicates that this notice was given by publication, but there is no indication in the record that the class members were ever mailed a notice. (ECF No. 75-1 at 6).

witnesses and provided no taped deposition testimony. Neither Collier nor Collier's counsel appeared at the hearing. The Lincoln County Circuit Court found that the Class had suffered injury and had been damaged in the total amount of $82,037,000, $70,085,000 of which was for future medical monitoring, plus $11,952,000 for diminution in value to the class members' mobile homes, based upon their receipt of contaminated well water.

In the instant action for equitable garnishment, Plaintiff seeks to garnish amounts owing to Collier under Collier's insurance policies. Defendants removed the Petition to federal court on November 26, 2013. The Petition alleges that Defendants' "denial of coverage and refusal to defend Collier constituted a breach of [Defendants'] contractual duty to indemnify and defend." Plaintiff further states that the Class is "entitled to recover and apply the insurance money" owed to Collier to satisfy the Class Judgment and asks for judgment against the insurers "in the total amount of $82,037,000, plus post-judgment interest at the maximum statutory rate, subject only to the applicable limits of liability."

### STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

The Court reviews a motion for judgment on the pleadings under "the same standard used to address a motion to dismiss for failure to state a claim under [Fed.R.Civ.P.] 12(b)(6)." *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009)(citing *Ashley County, Ark. v. Pfizer, Inc.,* 552 F.3d 659, 665 (8th Cir. 2009)). "A grant of judgment on the pleadings is appropriate 'where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" *Clemons*, 585 F.3d at 1124 (citing *Poehl v. Countrywide Home Loans,* Inc., 528 F.3d 1093, 1096 (8th Cir. 2008)). The Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto Servs.*, 432 F.3d 866, 867 (8th Cir. 2005)).

Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted).

## DISCUSSION

Missouri Revised Statutes §379.200 provides:

> Upon the recovery of a final judgment against any person, firm or corporation by any person ... for loss or damage on account of bodily injury or death, or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance ..., and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment....

Missouri Revised Statutes §379.200 (2014). "A judgment creditor stands in the shoes of the insured and has rights no greater and no less than the insured's rights would have been if the insured paid the judgment and then sought reimbursement from the insurer." *James v. Paul*, 49 S.W.3d 678, 683-84 (Mo. 2001)(citing *Greer v. Zurich Ins. Co.,* 441 S.W.2d 15, 30 (Mo.1969)).

"Once an insurer unjustifiably refuses to defend or provide coverage, the insured may, without the insurer's consent, enter an agreement with the plaintiff to limit its liability to its insurance policies." *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 710 (Mo. 2011). If an insurer unjustifiably refuses to defend a claim because it is outside the policy it "renders the insurer liable to the insured for all resultant damages from that breach of contract." *Schmitz*, 337 S.W.3d at 710 (citing *Whitehead v. Lakeside Hosp. Ass'n,* 844 S.W.2d 475, 481 (Mo. Ct. App. 1992)); *see also Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 273 (Mo. 2013)("Columbia cannot refuse to defend and then relitigate the already-determined reasonableness issue where it has been the subject of a court judgment after a hearing and

- 5 -

determination of reasonableness by the court."). Under existing Missouri case law, however, an insurer who does not have an obligation to defend under the policy does not breach its contract with its insured and, therefore, does not waive any defenses to coverage as to the judgment. That is, an insurer who properly declines to defend an underlying claim may raise all proper defenses to coverage when the insured (or the underlying claimant) later seeks to establish a duty to indemnify under an underlying judgment.

Here, Plaintiff argues that Defendants cannot attack the Underlying Judgment because they chose not to defend Collier in that action. *See Schmitz*, 337 S.W.3d at 710 (Insured "was bound to the section 537.065 agreement because it unjustifiably refused to defend, and it was bound to the trial court's judgment ... because it had an opportunity to control and manage the trial but failed to seize it"). However, Defendants argue that they did not wrongly deny a duty to defend and likewise did not breach their contracts with Collier and, therefore, did not waive any defenses as to coverage with respect to the ultimate judgment. Thus, Defendants maintain that they properly declined to defend an underlying claim and can raise all proper defenses to coverage because Plaintiff seeks to establish a duty to indemnify an Underlying Judgment. The Court, therefore, addresses whether Defendants breached their duty to defend.

Duty to Defend

Under Missouri law, the duty to defend arises when there is potential liability at the outset of the third party's case. *Doe Run Res. Corp. v. Lexington Ins. Co.*, 719 F.3d 868, 870-71 (8th Cir. 2013). Normally, the duty "is determined by comparing the language of the insurance policy with the allegations in the Complaint." *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. Liab. Ins. Co.,* 989 S.W.2d 168, 170 (Mo. 1999) (citation omitted). "But the insurer may not ignore 'actual facts,' that is, 'facts which were known, or should have been reasonably apparent at the

- 6 -

commencement of the [Underlying Lawsuit].' " *Esicorp, Inc. v. Liberty Mut. Ins. Co.,* 193 F.3d 966, 969 (8th Cir.1999) (quotation omitted).

Here, the Class seeks to collect the Underlying Judgment by means of an equitable garnishment. "To collect a judgment through equitable garnishment, the plaintiff has the burden to show by substantial evidence that the claim is within the coverage provided within the insurance contract." *Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724, 727 (8th Cir. 2012)(citing *Peck v. Alliance Gen. Ins. Co.,* 998 S.W.2d 71, 74 (Mo. Ct. App. 1999)).

Defendants have no duty to defend if the policies' pollution exclusions barred coverage of all claims asserted in the Underlying Lawsuit. *See Doe Run Res. Corp.*, 719 F.3d at 871. "Where insurance policy terms unambiguously apply, including coverage exclusions, they will be enforced as written." *Doe Run Res. Corp.*, 719 F.3d at 871 (quoting *Krombach v. Mayflower Ins.* Co., 827 S.W.2d 208, 210 (Mo. 1992); *Auto Club Family Ins. Co. v. Jacobsen,* 19 S.W.3d 178, 183 (Mo. Ct. App. 2000)).

The Court recognizes that "[a] duty to defend 'arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case,' and it is 'broader than the duty to indemnify.'" *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. Mo. 2012)(quoting *McCormack Baron Mgmt. Servs., Inc.*, 989 S.W.2d at 170). "The duty to defend is determined by the language in the policy and the allegations in the Complaint." *Secura Ins.*, 670 F.3d at 861; *McCormack Baron Mgmt. Servs., Inc.*, 989 S.W.2d at 170. Under Missouri law, the insured has the burden to show that the policy covers its loss. *Secura Ins.*, 670 F.3d at 861-62; *American States Ins. Co. v. Mathis*, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998).

The Court also notes that Missouri "strictly construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies." *Burns v. Smith*, 303 S.W.3d

505, 510 (Mo. banc. 2010)(citing *Aetna Cas. & Sur. Co. v. Haas*, 422 S.W.2d 316, 321 (Mo. banc 1968); *Crossman v. Yacubovich*, 290 S.W.3d 775, 779 (Mo. Ct. App.2009); *McRaven v. F-Stop Photo Labs, Inc.*, 660 S.W.2d 459, 462 (Mo. Ct. App.1983)); *Gear Auto., L.L.C. v. Acceptance Indem. Ins. Co.*, No. 11-CV-00421-W-FJG, 2012 U.S. Dist. LEXIS 69775, at *13 (W.D. Mo. May 18, 2012). "When an insurance company seeks to escape coverage based on a policy exclusion, the burden is on the insurer to establish that the exclusion is applicable." *Hartford Accident & Indem. Co. v. Doe Run Res. Corp.*, No. 4:08-CV-1687 CAS, 2010 U.S. Dist. LEXIS 40608, at *7-8 (E.D. Mo. 2010) (citing *American Family Mut. Ins. Co. v. Bramlett ex rel. Bramlett*, 31 S.W.3d 1, 4 (Mo. Ct. App. 2000)); *Agri. Ins. Co. v. Focus Homes, Inc.*, 212 F.3d 407, 410 (8th Cir. 2000)(citation omitted)("Exclusions are to be strictly interpreted against the insurer and an insurer denying coverage because of an exclusion bears the burden of proof."); *Stan Koch & Sons Trucking, Inc. v. Great W. Cas. Co.*, 517 F.3d 1032, 1040 (8th Cir. 2008).

First, the Court must address whether the pollution exclusion is ambiguous. Under Missouri law, "courts look only to the contract language when interpreting the agreement, unless the language is ambiguous." *Clifton v. Am. Family Mut. Ins. Co.*, 507 F.3d 1102, 1105 (8th Cir. 2007) (citing *Royal Banks v. Fridkin*, 819 S.W.2d 359, 361 (Mo. 1991)). *Robbins v. McDonnell Douglas Corp.*, 27 S.W.3d 491, 496 (Mo. Ct. App. 2000) ("An ambiguity does not exist merely because the parties dispute the meaning of the contract."). "To determine whether a contract is ambiguous, we consider the instrument as a whole, giving the words contained therein their ordinary meaning." *Deal v. Consumer Programs, Inc.*, 470 F.3d 1225, 1230 (8th Cir. Mo. 2006)(citing *Young Dental Mfg. Co. v. Engineered Prods., Inc.*, 838 S.W.2d 154, 156 (Mo. Ct. App. 1992)). "'If the language is ambiguous, it will be construed against the insurer.'" *Hartford Accident & Indem. Co.*, 2010 U.S. Dist. LEXIS 40608, at *6 (quoting *Peters v. Employers Mut.*

*Cas. Co.*, 853 S.W.2d 300, 302 (Mo. 1993) (en banc)). "'Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage.'" *Hartford Accident & Indem. Co.*, 2010 U.S. Dist. LEXIS 40608, at \*6-7 (quoting *Nixon v. Life Investors Ins. Co. of America*, 675 S.W.2d 676, 679 (Mo. Ct. App. 1984)).

## I.    Owners Insurance Company

In this case, Owners Insurance Company ("Owners") denied coverage for the class claims made against Collier in the Underlying Lawsuit. Owners told Collier that its policies provided Collier with no coverage for the pollution claims based on, inter alia, the absolute pollution exclusions contained in the policies. In addition, Owners told Collier that no coverage existed for Plaintiff's claim that Collier breached its promise to build certain "amenities" at the park because the claim did not involve an "occurrence" (or "accident") causing "property damage," but instead related to Collier's deliberate breach of contract, which had no coverage under the policies.

A. Pollution Exclusion Covers Particles and Coliform Bacteria

The Owners policies provide coverage for "bodily injury" or "property damage" resulting from an "occurrence," i.e., an "accident." Each Owners policy contains an absolute "pollution" exclusion. The pollution exclusion in Owners' 2005-2006 policy, which is applicable to the policy's coverage for "bodily injury" and "property damage" provides the following pollution exclusion:

> 2. Exclusions....This insurance does not apply to: ... f. Pollution...(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants": (a) At or from any premises, site or location which is or was at any time owned or occupied by, rented or loaned to, any insured....
>
> \* \* \*

> "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(ECF No. 59 at 9; Ex. B). The 2005-2006 policy also contains a second absolute pollution exclusion applicable to the policy's coverage for "personal and advertising injury liability." (ECF No. 59 at 13-14; Ex. B). The other Owners policies, for the 2006 to 2009 period, contain similar absolute pollution exclusions and definitions for the term "pollutants." (ECF No. 59 at 18, 21, 23; Exs. C, D, and E).

Owners argue that the underlying claims, with the exception of the amenities claim, all fit within the pollution exclusion because they all flow from the migration of pollutants from the park's wells into the homes of the park's residents. Plaintiff alleged that Collier drilled and constructed two wells into an aquifer that was "known to have levels of Radium 226, 228 and Gross Alpha," and that these wells, which provided the mobile home park's "community water system source," subsequently "dispens[ed]" water contaminated by "radioactive Gross Alpha" and "radioactive Gross Beta" into the residents' homes. The Pratt Petition alleges the presence and discharge of "contaminants" in the park's drinking water supply, at levels of contamination that violate the United States Clean Water Act, the Missouri Clean Water Act, and the regulations of the United States Environmental Protection Agency, and the Missouri Department of Natural Resources ("MDNR"). The Pratt Petition further alleges that the MDNR repeatedly detected in the parking park's drinking water excess levels of the following contaminating substances: (1) coliform bacteria, (2) fluoride and iron, and (3) radionuclides, *i.e.*, radium-226 and radium-228, and the alpha and beta particles admitted by radium.

Owners contends that Plaintiff's allegations implicate Owners' absolute pollution exclusions, which bar coverage for claims arising out of "pollution," including the "release,"

"discharge," or "migration" of "pollutants." Owners maintains that the allegations in the Pratt Petition fall within the pollution exclusion because they allege claims arising out of the migration, release, and discharge of contaminants throughout the park's public water supply and which were dispensed and released into the residents' homes. *See Doe Run Resources Corp.*, 719 F.3d at 873-74.

In addition, Owners maintains that the ordinary meaning of "contaminants" establishes that radioactive materials and coliform bacteria are "contaminants." (ECF No. 75-1 at 15-16)(citing various dictionaries). In addition, the EP classifies each of the substances identified in the Pratt Petition as "contaminants," including radionuclides (commonly referred to as "naturally occurring radioactive material" or "NORM"), coliform bacteria, fluoride, and iron. (ECF No. 75-1 at 16).

Further, Owners notes that a radionuclide is a radioactive atom. (ECF No. 75-1 at 16 (citing *In re TMI Litig.*, 193 F.3d 613, 633 (3d Cir. 1999)). Here, Radium isotopes, radium-226 and radium-228, are alleged to have emitted alpha and beta particles. The particles only travel short distances—about 0.1 millimeters of a material such as water. *In re TMI Litig.*, 193 F.3d at 633, n.27. In addition, Owners states that radioactive materials have long been regarded as pollutants. (ECF No. 75-1 at 17 (citing *Train v. Colorado Pub. Interest Research Grp., Inc.*, 426 U.S. 1, 11, 96 S. Ct. 1938, 1943, 48 L. Ed. 2d 434 (1976)("The term 'pollutant' as defined in the bill [for the Federal Water Pollution Control Act] includes 'radioactive materials.'"); 33 U.S.C. §§1251, *et seq.*, 42 U.S.C. §7412). Owners further argues that radionuclides are commonly understood to be solids and alpha particles to be gaseous. (ECF No. 75-1 at 17 (citing MDNR regulations, 10 CSR 60-2.015, defining an alpha particle to be ionized Helium; EPA acknowledges that alpha particles are gaseous). Finally, Owners notes that there can be no alpha particle radiation

without radium and radium is a solid. (ECF No. 75-1 at 17 (citing the Periodic Table of Elements).

Owners also claims that coliform bacteria is a "contaminant" (and, therefore, a pollutant) under the case law. (ECF No. 75-1 at 18 (citing, inter alia, *Scheble v. Missouri Clean Water Comm'n*, 734 S.W.2d 541, 553-54 (Mo. Ct. App. 1987)(fecal coliform was a "water contaminant" because "samples taken from the discharge pipes showed fecal coliform levels far in excess of the permissible state levels").

Finally, Owners maintains that courts conclude that dispensing contaminated water from wells triggers policies' pollution exclusions. (ECF No. 75-1 at 19 (citing *Scottsdale Indem. Co. v. Vill. of Crestwood*, 673 F.3d 715, 720 (7th Cir. 2012)("by distributing the water to the residents of Crestwood the Village caused the [pollutant] to migrate throughout the Village and inflict (or so it is alleged) widespread personal injuries, along with contamination of soil or structures that is likely to be costly to eliminate").

In response, Plaintiff claims that whether alpha particles are "solid, liquid, gaseous, or thermal" is a question of fact, particularly given that the Petition specifically alleges that alpha particle radiation is not a "solid, liquid, or gas." (ECF No. 89 at 10-12) (citing Petition, ¶10). Plaintiff also points to expert testimony that she provided in an unopposed judgment she obtained in the Underlying Lawsuit. Plaintiff further claims that the Court cannot take judicial notice of dictionary definitions here. (ECF No. 89 at 12).

Plaintiff also argues that Owners cannot save its argument by pointing to statutory and regulatory classifications to determine whether a substance is a "pollutant." (ECF No. 89 at 13). Plaintiff claims that there are material differences in the languages of the statutes and Owners'

asserted definitions. (*Id.*) Plaintiff admits that the Eighth Circuit recently indicated that a Court may consider statutory and regulatory classifications among the other facts it ultimately addresses. (*Id.* (citing *United Fire & Cas. Co. v. Titan Contractors, Servs. Inc.*, 751 F.3d 880 (8th Cir. 2014)). Plaintiff, however, notes that *United Fire* was decided on summary judgment and, therefore, is inapplicable to this fact-intensive inquiry. (*Id.*) Plaintiff emphasizes that none of the cases cited by Defendant were Rule 12 motions; rather, all of them were decided after factual findings were made. (ECF No. 89 at 13-14).

Plaintiff also argues that the exclusion of "irritants" and "contaminants" is ambiguous because those terms were not defined in Owners' policies. (ECF No. 89 at 15-16). Therefore, Plaintiff contends that an issue of fact exists as to whether an insured would ordinarily understand "naturally occurring alpha particles" to be included in the term "pollutant." (ECF No. 89 at 17). Plaintiff notes that Collier did not dump any of these materials in the water supply or mix them with water to contaminate it. (*Id.*) Likewise, Plaintiff contends that Owners has not demonstrated that coliform bacteria is a solid, liquid, gas or thermal as a matter of law and, therefore, not a pollutant. (ECF No. 89 at 15, n.9). In sum, Plaintiff argues that Owners has failed to establish as a matter of law that "alpha particles" as alleged in the Pratt Petition are unambiguously "irritants" or "contaminants" under the pollution exclusion in Owners' policies.

The Court finds that Owners is entitled to judgment as a matter of law and that no factual dispute precludes granting the Rule 12(c) motion. First, the Court notes that the relevant pleading to determine whether Owners owed a duty to defend is the Pratt Petition. *See Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 552 (Mo. 2014)("The insurer's duty to defend, though broader than its duty to indemnify, arises only when there is a potential or possible liability to pay based on the facts at the outset of the case.")(internal citations and quotations omitted). The

Court determines coverage by a comparison of the Pratt Petition (ECF No. 1-5) and the pollution exclusion clause in Owners' policies.

Second, the Court holds that the pollution exclusions in the policies are not ambiguous and the allegations in the Pratt Petition fell within the pollution exclusion as a matter of law. Plaintiff alleged in the Pratt Petition that there was a migration of contaminants due to the drilling of water wells into the park's drinking water system and then into the homes of the park's residents. The Pratt Petition includes several allegations, which clearly demonstrate that the alpha particles and coliform are contaminants:

20. [Collier's] Engineering Report and Specifications warned the Defendants that water levels below 1500 feet, at the Park's proposed site, would require drilling into the Roubidoux Formation aquifer which was "known to have high levels of Radium 226, 228 and Gross Alpha";

\*\*\*

22. In September 1998, after construction and drilling of Well No. 1 and Well No. 2 was completed, the Defendants received water quality test reports from St. Louis Test Laboratories indicating that the water dispensing from Well No. 1 contained a radioactive Gross Alpha level of 28.2 +/- picoCuries per Liter (pCi/L) and that water dispensing from Well No. 2 contained a radioactive Gross Alpha level of 13.4 +/- 2.5 (pCi/L);

\*\*\*

25. On January 1, 1999, [the Missouri Department of Natural Resources] reported to [Collier] the following:

a. Well No. 1 had been coliform bacteria positive on several tests ...

- 14 -

\*\*\*

39. On or about October 31, 2003, the Department of Natural Resources promulgated regulations, hereinafter referred to (the "**Radionuclide Rule**"), that set the acceptable Maximum Contaminant Levels of public water-supply systems, like that at the Park, for Gross Alpha Emitters at 15 (pCi/L);

40. On or about October 31, 2003, the Department of Natural Resources promulgated regulations, hereinafter referred to (the "**Radionuclide Rule**"), that set the acceptable Maximum Contaminant Levels of public water-supply systems, like that at the Park, for combined Radium 226 and 228 at 5 (pCi/L);

\*\*\*

54. The Park's public water-supply system's historical data indicates that it's [sic] radionuclide contamination levels exceeded the maximum amount allowable by Missouri State and Federal Law every year since 2003 to the present;

55. Upon information and belief, the Park's public water-supply system exceeded the Maximum Contaminant Levels of Gross Alpha Emitters set at 15 (pCi/L) and exceeded the Maximum Contaminant Levels of Gross Alpha Emitters set at 15 (pCi/L) and exceeded the Maximum Contaminant Levels for combined Radium 226 and 228 set at 5 (pCi/L) since Well No. 1 and Well No. 2 came online in 1998; and,

56. Defendants remain in violation of Department of Natural Resources, Division of Environmental Quality specifications as found in 10 C.S.R. 60-10 of the Missouri Safe Drinking Water Act and the Missouri Public Drinking Water Regulations.

(Pratt Petition, ECF No. 1-5). The allegations of excess levels of a number of contaminating substances (1) coliform bacteria (Pratt Petition, ¶¶25, 29, 30, 80, 99); (2) fluoride and iron (*id.*, ¶¶24, 25c, 25e); radioactive elements known as "radionuclides," that is, radium-226 and radium-228, and the alpha and beta particles that radium emits (*id.*, ¶¶22-25, 36, 38-41, 45-48, 54-56). The Pratt Petition repeatedly refers to each of these substances as "contaminants." (*Id.*, ¶¶25, 35c, 36, 54, 55, 62, 64, 80, 87).

After comparing the allegations in the Pratt Petition to the pollution exclusion in Owners' policies, the Court finds that Owners had no duty to defend Collier. The Pratt Petition makes clear that Plaintiff's claims regarding the radionuclides and coliform bacteria in the water supply are subsumed by the pollution exclusion. The Eighth Circuit's analysis in *Doe Run Res. Corp. v. Lexington Ins. Co.* is equally relevant to Plaintiff's claims here:

> The general fact allegations in [Plaintiff's] pleading reflect a prototypical complaint for relief from environmental property damage. More importantly, each of [Plaintiff's] six tort causes of action, including the common law trespass and nuisance claims, were *entirely* premised on allegations that Doe Run is liable to [Plaintiff] for causing the "release" or "discharge" of "hazardous wastes," "toxic substances," and "contaminants," mirroring the language of Lexington's absolute pollution exclusions. It is hard to imagine a more perfect overlap between the allegations in a third party's underlying complaint and the operative language of a pollution exclusion.

*Doe Run Res. Corp.*, 719 F.3d at 873-74 (emphasis in original). Here, Plaintiff's allegations seek damages due to environmental contamination that, based upon Eighth Circuit precedent, fit within the pollution exclusion.

The Court finds Plaintiff's argument that a greater factual record is necessary to be unpersuasive. Plaintiff can cite nothing in the Pratt Petition that would be outside of the purview of Owners' pollution exclusion. Rather, Plaintiff cites to the Petition in the equitable garnishment action to support the proposition that the Court must defer to her allegation that "alpha particles are not a solid, liquid, or a gas." (Petition, ¶10). The allegations in her equitable

garnishment Petition are not relevant to whether Owners had a duty to defend at the inception of the underlying litigation. Facts offered at trial and the underlying judgment do not create an issue of fact regarding a duty to defend. *See McCormack Baron Mgmt. Servs., Inc.*, 989 S.W.2d at 170 ("The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial."); *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 39 (Mo. Ct. App. 2007)(citing *Inter–State Oil Co. v. Equity Mut. Ins. Co.,* 183 S.W.2d 328, 332 (Mo.App.K.C.1944)("The obligation of defendant to defend a suit filed against plaintiff is to be determined from the cause of action pleaded, *at the time the action is commenced,* not from what an investigation or a trial of the case may show the true facts to be."). Plaintiff does not cite to any allegations in the Pratt Petition that would invoke Owners' duty to defend. Therefore, contrary to Plaintiff's contention, no development of the factual record would change Owners' entitlement to judgment on the pleadings.

Based upon the allegations in the Pratt Petition, the Court finds that radionuclides (or radiation from radium and alpha particles) and coliform bacteria are pollutants as a matter of law and the pollution exclusion was unambiguous. There can be no dispute that the contaminants at issue here are pollutants under the policy. Radium is indisputably a solid which emits alpha particles. *See* http://www.epa.gov/superfund/health/contaminants/radiation/pdfs/Radium%20Fact%20Sheet%20final.pdf (last visited on 2/19/15). Radium and its naturally occurring radioactive emissions (including alpha particles) must be pollutants within the plain meaning of that term. *See id.* (noting that radium releases radiation during the decay process in the form of alpha particles and that alpha particles can travel only short distances); ECF No. 97 at 10-13; *U.S. Fid. & Guar. Co.*

*v. B & B Oil Well Serv., Inc.*, 910 F. Supp. 1172, 1178, n.5 (S.D. Miss. 1995)("The court … has no difficulty in concluding that NORM [naturally occurring radioactive material] is, in fact, a pollutant within the policy's definition of that term."); *United Fire & Cas. Co.*, 751 F.3d at 884 (quoting *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 708 (Mo. 2011)("When a term 'is not defined in the policy, ... it is necessary to use the ordinary meaning of the word, as set forth in the dictionary.'"); *Train*, 426 U.S. at 11 (nuclear materials are "pollutants" under the FWPCA); 33 U.S.C. §§1251, *et seq*. (Clean Water Act); 42 U.S.C. §7412 (Congress's definition of Hazardous Air Pollutants); *Constitution State Ins. Co. v. Iso-Tex Inc.*, 61 F.3d 405, 409-10 (5th Cir. 1995)(holding insurance company owed no coverage or indemnity for the claims for bodily injury arising out of contamination by nuclear waste based upon the unambiguous pollution exclusion); *Sunny Ridge Enterprises, Inc. v. Fireman's Fund Ins. Co.*, 132 F. Supp. 2d 525, 527 (E.D. Ky. 2001)(nuclear energy within purview of pollution exclusion). The Pratt Petition alleges that fecal coliform was detected in the park's drinking water, which was dispensed into the park's wells to the residents. The Court holds that coliform bacteria is also a pollutant under the plain meaning of the term. *See* http://water.epa.gov/drink/contaminants/index.cfm#List (last viewed on 2/19/15)(listing drinking water contaminants); *Scheble v. Missouri Clean Water Comm'n*, 734 S.W.2d 541, 554 (Mo. Ct. App. 1987)(presence of fecal coliform in excess of permissible level demonstrates that it is a "water contaminant" under § 204.016(12) and also "pollution" as defined in § 204.016(7)). The Court finds that fecal coliform is a contaminant and fits within the Owners' policies' pollution exclusion.

Based upon the foregoing, the Court holds that Plaintiff's claims, with the exception of Plaintiff's amenities claims, all flow from the migration of pollutants form the park's wells and

discharge into the homes of the park's residents. Therefore, the Court holds that these claims fall within the pollution exclusion in the Owners' policies and, therefore, Owners had no duty to defend the Underlying Lawsuit as to Plaintiff's claims for environmental pollution. *United Fire & Cas. Co.*, 751 F.3d at 886.

B. Amenities Claims Not Covered

Owners also maintains it had no duty to defend the claim in the Underlying Lawsuit that Collier breached its obligation to build certain amenities. (ECF No. 75-1 at 19-20). The Pratt Petition alleges that Collier promised to build certain amenities for the mobile home park, including a "picnic area, basketball court, softball diamond" and that Collier failed to provide these amenities and thereby "breached the Lease agreement" with Plaintiff. Owners states that its policies provide Collier with no coverage for what is breach of contract claim based upon Collier's failure to perform a promised act. The Policies provide general liability coverage for (1) an "occurrence"—that is, an "accident"—that causes (2) "bodily injury" or "property damage." (ECF No. 75-1 at 19-20). Owners notes that under "well-settled that breaches of contracts are not 'accidents' or 'occurrences' for the purpose of insurance contracts." *Bituminous Cas. Corp. v. Scottsdale Ins. Co.*, No. 1:12-CV-84-SNLJ, 2013 WL 5739034, at \*3 (E.D. Mo. Oct. 22, 2013); *Am. States Ins. Co. v. Mathis*, 974 S.W.2d 647, 650 (Mo. Ct. App. 1998)("breaches of contract are not 'accidents' or 'occurrences'"). Owners states that Plaintiff cannot change her breach of contract claim into an "occurrence" by alleging it as fraud and negligence claims. Nor can Plaintiff claim "property damage" under the Policies based upon Collier's alleged breach of contract.

Plaintiff argues that its claim regarding the amenities was pleaded in the Pratt Petition as a negligence claim and, therefore, is a covered claim. (ECF No. 89 at 17, n.10). Plaintiff maintains that Owners must defend if there is any possibility of coverage.

The Court holds that Plaintiff's purported negligence claim regarding the amenities is not covered under Owners' insurance policy. Although Plaintiff purports to bring this as a negligence claim, the alleged cause of action clearly arises from Collier's breach of contract. "The specific theory under which the insured is being sued is irrelevant; if injury or damage arose out of the discharge of a pollutant, the exclusion is applied as written." *Vill. of Crestwood v. Ironshore Specialty Ins. Co.*, 986 N.E.2d 678, 683 (Ill. App. Ct. 2013); Allan D. Windt, 3 Insurance Claims and Disputes § 11:11 (5th ed. 2007). The Owners' policies provide general liability coverage for (1) an "occurrence"—that is, an accident"—that causes (2) "bodily injury" or "property damage." "Missouri law is clear that breaches of contract are not occurrences." *Bituminous Cas. Corp.*, 2013 WL 5739034, at *4. The Court holds that Owners had no duty to defend Collier as to Plaintiff's claim that certain amenities were not built because such allegation sounds in contract, not tort, and is not covered under the policies.

C. No Duty to Indemnify

Owners notes that the duty to defend is broader than the duty to indemnify. (ECF No. 75-1 at 20-21) (citing *United Fire & Cas. Co.*, 751 F.3d at 883 ("Because an insurer's duty to defend is broader than its duty to indemnify, ..., if United owes no duty to defend, it likewise owes no duty to indemnify."); *Trainwreck West Inc.*, 235 S.W.3d at 44. Because Owners had no duty to defend, it maintains that it likewise had no duty to indemnify.

In response, Plaintiff asserts that even assuming arguendo that Owners had no duty to defend, Owners still has not established as a matter of law that it had no duty to indemnify. (ECF No. 89

- 20 -

at 17-18). Plaintiff maintains that the duty to defend is determined by the facts established at trial or by some other means. (ECF No. 89 at 18 (citing *McCormack Baron Mgmt Servs., Inc.*, 989 S.W. 2d at 173-74). Plaintiff argues that in addition to the facts pleaded in the Pratt Petition in the Underlying Lawsuit, even new facts not pleaded may be revealed at trial and create a duty to defend. (ECF No. 89 at 18).

The case law is clear that "'[w]here there is no duty to defend, there is no duty to indemnify.'" *Trainwreck W. Inc.*, 235 S.W.3d at 44 (quoting *Am. States Ins. Co. v. Herman C. Kempker Constr. Co.*, 71 S.W.3d 232, 236 (Mo. Ct. App. 2002)). Accordingly, the Court holds that because Owners owed Collier no duty to defend then it also owed Colliers no duty to indemnify.

In sum, the Court holds that Owners is entitled to judgment as a matter of law on Plaintiff's equitable garnishment claim. The Court grants Owners' Motion for Judgment on the Pleadings.

## II. Capitol Indemnity Insurance Company and Employers Mutual Casualty Company's Policies

Capitol issued two policies ("Policies") to Collier, which provided coverage from April 1, 2003 to April 1, 2005. Coverage A of the Policies provides coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' and 'property damage,'" as defined, 'subject to certain exclusions and conditions. The Policies specifically defined both "bodily injury" and "property damage." "Bodily injury" was defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." "Property damage" was defined as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it, or

- 21 -

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

The Policies are also subject to a Total Pollution Exclusion, which excludes coverage for:

(1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threated discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    (b) Claim or suit by or behalf of a government authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

The Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises site or location.

Employers Mutual Casualty Company ("EMC") issued three (3) policies of insurance to Collier for the time period of March 13, 1999 through March 13, 2002. Coverage A of the Policies provides coverage for "Bodily Injury and Property Damage Liability." "Bodily injury" and "property damage" are covered only if caused by an "occurrence".

The EMC Policies also contained the following pollution exclusion:

This insurance does not apply to:

\*\*\*

f. Pollution
(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threated discharge, dispersal, seepage, migration, release or escape of pollutants:
\*\*\*
(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;
\*\*\*

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

As with the Owners' policies, the Court compares the pollutions exclusion in Capitol Indemnity's and EMC's insurance policies and the Pratt Petition and holds that Capitol Indemnity and EMC owed Colliers neither a duty to defend nor a duty to indemnify. Further, the tort claims regarding park amenities is not covered because it is not an occurrence. Finally, the duty to indemnify is not implicated because there is no duty to defend.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Owners Insurance Company's Motion for Judgment on the Pleadings (ECF No. 73), Capitol Indemnity Insurance Company's Motion for Judgment on the Pleadings (ECF No. 76), and Defendant Employers Mutual Casualty Company's Motion for Judgment on the Pleadings (ECF No. 79) are **GRANTED**. A Judgment is filed herewith.

Dated this 2nd day of March, 2015.

Bonnie L. White

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**